[Civ. No. 9253. Second Appellate District, Division Two.—February 14, 1935.]

JENNIE COOPER WALTERS, Respondent, v. WEST AMERICAN INSURANCE COMPANY (a Corporation), Appellant.

Chapman & Chapman and Ward Chapman for Appellant.

Holland & Holland and Kenneth D. Holland for Respondent.

SCOTT, J., *pro tem.*—Plaintiff recovered judgment against one Lerner for injuries caused by the latter's automobile, and thereafter brought this suit against defendant insurance company alleging it to be liability insurance carrier of Lerner. Judgment was awarded to plaintiff, from which this appeal is taken.

The trial court found that appellant had entered into an oral contract of insurance with Lerner insuring him against liability for injury or death of another by reason of the operation of his automobile, and that said oral contract included the right of an injured third person to sue the company on a judgment recovered against the insured.

The transaction involved, in addition to appellant, two individuals, Laswell and Graves, and a corporation, Commercial Discount Company. The discount company was in the business of buying automobile sales contracts at discount. It owned a majority of appellant's stock, occupied same quarters with it and one man was vice-president of both

concerns, exercising general supervision of operations of both. Discount company was authorized to write policies of insurance in and for appellant insurance company providing coverage usually demanded by vendors in cases of such automobile contracts, not including public liability. It is conceded that Graves was a soliciting agent of appellant, having a license as such agent issued by the state insurance commissioner, was a customer of the discount company and had never written any policy of insurance but had received and transmitted applications and premiums. Laswell conducted an automobile loan business for himself in the same office with Graves, and handled his insurance under Graves' license. It was admitted that Graves and Laswell were not general agents with authority to write out policies in their own office.

Lerner, owner of the automobile which injured plaintiff, secured a loan on his car from Laswell, transferred the pink certificate of ownership to the latter and signed a conditional sales contract, credit statement and application for insurance. A memorandum was also signed noting his request for public liability insurance. Lerner paid for such liability coverage a premium of $24. It was understood that the liability insurance had nothing to do with the loan or the vendor's insurance, although the premium was to be paid out of the proceeds of the loan. The documents were transmitted to the discount company, where the loan was discounted and the policies, except for public liability, were issued but were kept in files of the discount company; except that no application for liability insurance or premium therefor was ever sent to appellant or to the discount company and said policy was never issued, although the premium was not returned to applicant and he was not told that his application had been rejected. Lerner was told by Laswell that he would procure such insurance for him in a strong insurance company, but no specific company was named. There is nothing to indicate that he understood such policy would be in effect until it had been thus procured, that is, until there had been an acceptance by the company.

Lerner came to Laswell as a stranger. He had never heard of any of the parties, nor does it appear that he knew, at the time he transacted his business with Laswell, that the latter or Graves had anything to do with appellant insurance company as agents or otherwise. From the papers he signed he could see that the discount company would have

some connection with the deal. Lerner never contacted the insurance company or discount company until after the accident, although when he had repaid his loan he received from the office of appellant his "automobile certificate policy", which clearly did not include any liability insurance.

On such state of facts we are unable to discover support for the trial court's finding that there was an oral contract. The instant case is readily distinguishable from *Marderosian* v. *National Casualty Co.*, 96 Cal. App. 295 [273 Pac. 1093], and *Eames* v. *Home Ins. Co.*, 94 U. S. 621 [24 L. Ed. 298], cited by respondent. The theory upon which respondent defends her recovery is that the parties entered into an oral contract and included in it by inference all the terms which would be included in the written contract, and that since the written contract if issued would have included provisions as required by Act 3738, Deering's General Laws, 1931, page 1896, Statutes 1919, page 776, entitling an injured third party to sue on an uncollectible judgment against assured, such provision would by implication be included in the oral contract and would justify the judgment in this case. It is conceded that the act cited applies by its terms to policies or written contracts as defined in Civil Code, section 2586. Respondent asserts, however, that "every clause in the written policy contemplated by the parties is part and parcel of the oral contract even though they are not known in detail by the agent and the insured at the time".

From an examination of many cases cited it is apparent that the oral contract which supports the judgment is frequently not an express contract, but a contract by estoppel. This view is expressed in *Massachusetts Bonding etc. Co.* v. *Vance*, 74 Okl. 261 [180 Pac. 693, 15 A. L. R. 981], cited by respondent. In supporting the claim of assured—not of a third party, as in this case—the court there said in conclusion: "For the purpose of defeating liability a party will not be heard to say he never made a contract, and, inconsistent with such assertion, retain the benefits flowing from the alleged transaction. In view of these facts we must hold that the company is without power to assert that its agent had no authority to make the contract which it is alleged he did, or to say no contract was made, and at the same time keep and retain all the benefits flowing from such alleged contract. By keeping and retaining the premium paid, the company is denied the right to say that Evans had no authority to make

the alleged contract or to deny that there was a parol contract of insurance.'' Further language used in the same case would seem to be contrary to respondent's view herein as above indicated, to the effect that provisions which the statute requires to be inserted in a written contract of insurance are presumed to be included in such oral agreement. In this connection it quotes with approval from *Baile* v. *St. Joseph etc. Ins. Co.*, 73 Mo. 371, as follows: ''The distinction between a contract to insure or to issue a policy of insurance and the policy itself is obvious, and constantly recognized by the courts.'' The latter case, referring to a certain statutory provision, says that it ''uses no prohibitory words; relates not to agreements to insure but only to policies when completed and ready for official signature''. It would seem that a statutory provision requiring insertion in a written policy of language as required by Act 3738, *supra,* relates not to a situation such as here presented but to one in which a written policy is issued.

We have considered whether appellant would be liable if the facts warranted a finding of contract by estoppel, and have concluded that the benefit of any such estoppel would not extend to respondent, who was an entire stranger to the dealings between Lerner and Laswell. (10 Cal. Jur. 610.) Our attention has not been directed to any case in which provisions which are not for the benefit of either of the contracting parties but which are solely a matter of statutory requirement in written insurance policies are held to be included in an oral contract founded not upon the express agreement of the parties but upon the equitable doctrine of estoppel. We have discovered no case or principle of law which would support such a contention. Under the evidence respondent may not recover from appellant.

Judgment reversed with directions to the trial court to enter judgment for appellant.

Stephens, P. J., and Crail, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 15, 1935, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 15, 1935, and the following opinion then rendered thereon:

THE COURT.—The petition for hearing in this cause is denied upon the ground that the evidence, as held by the District Court of Appeal, Second District, Division Two, fails to establish the existence of an oral contract of insurance. We expressly withhold approval, however, from that portion of the opinion which tends to indicate that an oral contract of insurance, even if shown to exist, would not inure to the benefit of a person injured by the insured and holding an uncollectible money judgment recovered for such injuries. This latter conclusion was unnecessary to the disposition of the cause and we, therefore, refrain from approving the same and express no opinion thereon.